```
                   UNITED STATES DISTRICT COURT
                    MIDDLE DISTRICT OF FLORIDA
                       JACKSONVILLE DIVISION


BESCO, INC., a Florida Corporation,

                Plaintiff,

vs.                                    Case No. 3:06-cv-674-J-33TEM

GRAND ELK MARINA & BEACH CLUB, LLC,
a foreign limited liability company,

                Defendant.
_____/
```

## ORDER

This matter comes before the Court pursuant to Defendant Grand Elk Marina & Beach Club LLC's Motion to Dismiss Plaintiff's Complaint and Incorporated Memorandum of Law for Lack of Personal Jurisdiction (Doc. # 5), filed by Defendant Grand Elk on August 16, 2006. Plaintiff Besco filed a response on September 6, 2006. (Doc. # 15.) For the reasons that follow, Grand Elk's motion is due to be denied.

**I.  Background**

Besco is owned and operated by Daniel Bowater, a resident of Jacksonville. (Doc. # 13-2.) Bowater is also the 90% owner of Norton Marina, a Colorado limited liability company. Id. In April 1997, Besco loaned Norton Marina $1.5 million to purchase a marina located in Granby, Colorado. Id. This lawsuit revolves around the marina in Granby, Colorado, and the loan from Besco.

Larry Martin is a real estate developer who lives in New York.

(Doc. # 6-4.)  He has interests in several different companies that in turn have interests in Grand Elk.  Id.

Between 1997 and 2001, the marina in Granby, Colorado, was owned by Norton Marina and managed by Bowater's daughter, Aimee Pafford, née Bowater.  (Doc. # 13-2; Doc. # 13-6.)  Sometime between 2000 and 2002 Bowater and Martin first met and discussed a joint venture for the development and operation of the marina.[1]  The two men and their business associates negotiated this joint venture extensively.  The parties disagree on precisely how the negotiations were conducted.  Besco asserts that some negotiations occurred during a physical meeting in Jacksonville (Doc. # 13-2), while Grand Elk disputes this (Doc. # 6-4).  Besco asserts that negotiations were also conducted by mail, e-mail, and telephone.  (Doc. # 13-2.)  Besco asserts that these communications were made between Florida and other locations.  Id.  Grand Elk asserts that its only contact with Florida was the alleged obligation to pay money in Florida, apparently contradicting Besco's statement that negotiation communications were directed into Florida.  (Doc. # 5, at 6.)

---

[1]Martin's affidavit says Bowater first approached him in late 2001 or early 2002.  (Doc. # 6-4.)  Bowater's affidavit says the two first discussed the possibility in the autumn of 2000.  (Doc. # 13-2.)  It appears Bowater's recollection is correct.  His affidavit states that, after he returned to Jacksonville, Bowater hired an appraiser to evaluate the market.  Id.  The date on Bowater's letter to the appraiser is October 10, 2000.  (Doc. # 13-3.)  Thus, the initial discussion between Martin and Bowater was likely prior to October 10, 2000.

However the negotiations actually occurred, the result was as follows: (1) Grand Elk was formed (Doc. # 15, at 6); (2) Norton Marina contributed to Grand Elk the marina in Granby, Colorado (Doc. # 15, at 6); and (3) Grand Elk assumed Norton Marina's obligations on the loan from Besco[2] (Doc. # 1, at 6).  Pafford continued to manage Grand Elk's operations from her office in Jacksonville, except that she managed the operations from Colorado during part of the year.  (Doc. # 13-2, at 4; Doc. # 13-6, at 3.) Besco filed this lawsuit on July 27, 2006, seeking to recover the amount due on the loan.

## II. Discussion

In its motion to dismiss, Grand Elk argues that the Court does not have personal jurisdiction in this case.  Grand Elk makes two principal arguments that personal jurisdiction is improper under the Due Process Clause of the Fourteenth Amendment.  First, it argues that it does not have sufficient minimum contacts with Florida.  (Doc. # 5, at 6.)  For this, Grand Elk relies on the proposition that the mere failure to pay money in Florida does not justify personal jurisdiction in Florida.  Grand Elk's second principal argument is that considerations of fair play and substantial justice render jurisdiction improper.  (Doc. # 5, at

---

[2]The Court refers to the loan and Grand Elk's assumption of its obligations only as background necessary to an understanding of this Order.  The Court makes no finding as to the enforceability of the loan agreement.

3

7.)

In response, Besco filed a memorandum and affidavits detailing Grand Elk's contacts with Florida.  In particular, the response states that substantial parts of the negotiations for the formation of Grand Elk occurred in Florida or between Florida and other states.  The response also states that Grand Elk's operations were managed from Florida -- except during the summer months when Grand Elk was managed from Colorado.  Further, the response alleges that Grand Elk solicited funds from Besco in Jacksonville. (Doc. # 15, at 7.)

It is clear where Besco and Grand Elk disagree.  There is a factual dispute about how the negotiations for the formation of Grand Elk occurred.  The sharpest dispute is over the nature of the meeting in Jacksonville. Besco's position is that Martin, Pafford, Bowater, and others met in Jacksonville in January 2002 to discuss the operations of the joint venture.  (Doc. # 13-6; see also Doc. # 13-2.)  Grand Elk's position is that Martin met with Bowater in Jacksonville, but the meeting was unrelated to the marina.  (Doc. # 6-4, at 2.)  The parties also appear to disagree on Grand Elk's other contacts with Florida.  Besco asserts that Grand Elk was managed from Jacksonville, and that Grand Elk solicited loans from Besco in Florida.  (Doc. # 13-6.)  In contrast, Grand Elk alleges that it has "no connection to Florida save for its alleged obligation to pay money" in Florida.  (Doc. # 5, at 7.)  This

4

appears to contradict Besco's allegations that Grand Elk was managed from Florida. To resolve these factual disputes, Besco requests a hearing.

No hearing is necessary, though, because there are sufficient essentially undisputed facts to support a finding of personal jurisdiction. Where the parties' evidence can be harmonized, the court may be able to decide the jurisdictional issue "based upon facts which are essentially undisputed." Venetian Salami Co. v. Parthenais, 554 So. 2d 499, 502-03 (Fla. 1989); see also Black v. Bryant, 905 F. Supp. 1046, 1051 (M.D. Fla. 1995). It is only where the undisputed facts are not sufficient to support a decision that "the trial court must hold a limited evidentiary hearing to determine the jurisdiction issue." Black, 905 F. Supp. at 1051; see also Venetian Salami, 554 So. 2d at 503.

In this case, it appears the essentially undisputed jurisdictional facts are three: (1) that Grand Elk's operations were managed from Jacksonville during at least part of the year, (2) that Grand Elk solicited funds from Besco in Jacksonville on several occasions, and (3) that the loan agreement required payment in Jacksonville. It is only on the matter of the January 2002 meeting in Jacksonville that the parties' affidavits truly cannot be harmonized. Besco avers that this meeting was a negotiation about how Grand Elk should be run. In direct contradiction, Grand Elk avers that this meeting was on a completely different matter.

5

Because the presence or absence of personal jurisdiction does not turn on the resolution of this factual question, the Court need not hold an evidentiary hearing on personal jurisdiction.

A two-part analysis is necessary to determine whether a district court proceeding under diversity jurisdiction has personal jurisdiction over a defendant. Posner v. Essex Ins. Co., Ltd., 178 F.3d 1209, 1214 (11th Cir. 1999); Sculptchair, Inc. v. Century Arts, Ltd., 94 F.3d 623, 626 (11th Cir. 1996). The first part of the analysis is the determination of whether the state long-arm statute provides for personal jurisdiction. Posner, 178 F.3d at 1214. This is a question of state law. Madara v. Hall, 916 F.2d 1510, 1514 (11th Cir. 1990). The second part of the analysis asks whether the exercise of personal jurisdiction complies with the Due Process Clause of the Fourteenth Amendment. Posner, 178 F.3d at 1214. This is a question of federal law.

In undertaking this analysis, a district court first looks to the plaintiff's allegations of jurisdictional facts. At this stage, the plaintiff must allege facts sufficient to establish a prima facie case of personal jurisdiction. Madara, 916 F.2d at 1514. Next, the defendant may submit affidavits, documents, or testimony proving facts contrary to the assertion of personal jurisdiction. Black v. Bryant, 905 F. Supp. 1046, 1051 (M.D. Fla. 1995); see also Jet Charter Serv., Inc. v. Koeck, 907 F.2d 1110, 1112 (11th Cir. 1990). Then, the burden shifts back to the

plaintiff to prove jurisdiction with the plaintiff's own evidence. Lawson Cattle & Equip., Inc. v. Pasture Renovators LLC, 139 Fed. Appx. 140, 142 (11th Cir. 2005); Jet Charter Serv., Inc. 907 F.2d at 1110; Black, 905 F. Supp. at 1051.

A federal district court sitting in diversity jurisdiction conducts the first part of the personal jurisdiction analysis by looking to the long-arm statute of the state in which the court sits. Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino, 447 F.3d 1357, 1360 (11th Cir. 2006); Black v. Bryant, 905 F. Supp. 1046, 1051 (M.D. Fla. 1995). Consequently, the inquiry begins with the Florida long-arm statute. The question is whether personal jurisdiction is proper in this case under the Florida long-arm statute.[3]

Florida's long-arm statute provides for personal jurisdiction over a defendant who breaches a contract in Florida:

> (1) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself . . . to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:
>
> (g) Breaching a contract in this state by failing to perform acts required by the contract to be performed in this state.

Fla. Stat. § 48.193 (West 2006). This statute authorizes specific

---

[3]In its motion to dismiss, Grand Elk does not argue that jurisdiction is improper under the Florida long-arm statute, instead limiting its argument to the Due Process requirement.

7

personal jurisdiction[4] over a defendant who breaches a contract that required payment of money in Florida. Thompson v. King, 523 F. Supp. 180, 184 (M.D. Fla. 1981).

Besco's assertion that the loan agreement required payment in Jacksonville is not contradicted by Grand Elk. Both the complaint and Bowater's affidavit make this assertion (Doc. # 13-2, at 4), and the assertion is not negated in any affidavit supporting Grand Elk's motion to dismiss. Indeed, Martin's affidavit specifically admits that Martin "agreed to the assumption by Grand Elk of a Promissory Note . . . entered into between Norton and Besco, Inc. . . . based on Mr. Bowater's statement that Besco needed Grand Elk to do so for Besco's own 'bonding purposes.'" (Doc. # 6-4, at 2.) Besco has alleged sufficient facts to establish a prima facie case of personal jurisdiction under Florida Statute § 48.193(1)(g), and Grand Elk has not submitted evidence contradicting these facts. As a result, personal jurisdiction exists under the Florida long-arm

---

[4] Specific jurisdiction is personal jurisdiction over an out-of-state defendant in litigation related to that defendant's contacts with the forum state. Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino, 447 F.3d 1357, 1360-61 & n.3 (11th Cir. 2006); Madara v. Hall, 916 F.2d 1510, 1516 n.7 (11th Cir. 1990) ("There are two types of personal jurisdiction: specific and general. Specific personal jurisdiction is founded on a party's contacts with the forum state that are related to the cause of action. General personal jurisdiction arises from a party's contacts with the forum state that are unrelated to the litigation."); see also Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 & n.15 (1985). Florida Statute § 48.193(1) provides for specific jurisdiction, and § 48.193(2) provides for general jurisdiction. See Stubbs, 447 F.3d at 1361 (determining that § 48.193(2) provides for general jurisdiction).

statute.

Once it is determined that the Florida long-arm statute provides for personal jurisdiction in this case, the second part of the analysis asks whether an exercise of personal jurisdiction by Florida would pass muster under the Due Process Clause of the Fourteenth Amendment. See Sculptchair, Inc. v. Century Arts, Ltd., 94 F.3d 623, 630 (11th Cir. 1996); Jet Charter Serv., Inc. v. Koeck, 907 F.2d 1110, 1113 (11th Cir. 1990). This due process portion of the analysis itself involves two steps. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476 (1985); Sculptchair, 94 F.3d at 630. The first step asks whether the defendant has established minimum contacts with the forum state, and the second step asks whether the exercise of personal jurisdiction would comport with "fair play and substantial justice." Burger King, 471 U.S. at 476; Sculptchair, 94 F.3d at 630-31; see also Stubbs, 447 F.3d at 1363 (stating that due process requires both minimum contacts, and fair play and substantial justice).

Based on the three essentially undisputed facts of Grand Elk's relationship with Florida, it is clear that Grand Elk has established sufficient minimum contacts with Florida to satisfy the requirements of the Due Process Clause. First, the loan agreement specifically required payment in Jacksonville. (Doc. # 6-3, at 5.) Second, Grand Elk solicited funding from Besco in Jacksonville. (Doc. # 13-6, at 3, 4.) Finally, and most importantly, Grand Elk's

9

operations were managed from Jacksonville.  (Doc. # 13-6, at 2.)

The U.S. Supreme Court has explained that the Due Process Clause requires "that individuals have fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign . . . ." Burger King, 471 U.S. at 472 (internal quotation marks omitted; alteration in original).  This requirement is met when a defendant has "purposely directed his activities at residents of the forum," and the litigation is related to those activities.  Id. (internal quotation marks omitted).  Where the litigation relates to "interstate contractual obligations, . . . parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other State for the consequences of their activities." Id. at 473 (internal quotation marks omitted).  The essence of the constitutional test is whether the defendant has purposely established minimum contacts with the forum state.  Id. at 474.  Central to this constitutional test is the question of whether the defendant's contacts are such that the defendant "should reasonably anticipate being haled into court [in the forum state]."  Id.  Where a defendant deliberately "has created continuing obligations between himself and residents of the forum," personal jurisdiction will likely lie.  See id. at 475–76.

In this case, Grand Elk created a continuing contractual relationship with Florida resident Besco.  Grand Elk solicited

10

loans from Besco on a number of occasions, and contractually promised to make payment at Besco's office in Jacksonville, Florida. On top of that, Grand Elk managed its operations from Jacksonville, at least during part of the year. Grand Elk cites authority for the proposition that the mere failure to pay money in Florida does not establish personal jurisdiction. (Doc. # 5, at 6 (citing <u>Voorhees v. Cilcorp, Inc.</u>, 837 F. Supp. 395 (M.D. Fla. 1993).) But this is not a case of the <u>mere</u> failure to pay money in Florida. In this case, Grand Elk has made substantial contacts with Florida in addition to the alleged obligation to pay money in Florida. Grand Elk has even managed its operations from Florida.

The second step of the Due Process analysis asks whether an exercise of jurisdiction would comport with fair play and substantial justice. If considerations of fair play and substantial justice demonstrate that jurisdiction is unreasonable, jurisdiction may be unconstitutional. <u>Burger King</u>, 471 U.S. at 477–78. However, "where a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." <u>Id.</u> at 477. Thus, in this case, Grand Elk has a high burden to defeat jurisdiction on the theory that it does not comport with fair play and substantial justice.

Grand Elk cannot meet that high burden. Having established

11

minimum contacts with Florida, Grand Elk must present a "compelling case" that considerations of fair play and substantial justice deprive Florida of jurisdiction.  This it has not done.

**III. Conclusion**

This Court has personal jurisdiction over Grand Elk.  First, the Florida long-arm statute authorizes personal jurisdiction in this case.  Second, personal jurisdiction comports with the requirements of due process: Grand Elk has established sufficient minimum contacts with Florida, and the exercise of jurisdiction is not counter to fair play and substantial justice.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

Defendant Grand Elk Marina & Beach Club LLC's Motion to Dismiss Plaintiff's Complaint and Incorporated Memorandum of Law for Lack of Personal Jurisdiction (Doc. # 5) is **DENIED.**

**DONE** and **ORDERED** in Chambers in Jacksonville, Florida, this 21st day of December 2006.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies: All Counsel of Record